

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-14-00229-CR**

**JAMES TYRONE RIGGS,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 66th District Court**
**Hill County, Texas**
**Trial Court No. 38026**

## OPINION

James Tyrone Riggs was convicted of the felony offense of evading arrest or detention with a vehicle. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A) (West 2011). He pled true to two prior felony convictions and was sentenced to 65 years in prison. Because Riggs was not harmed by the errors in the court's charge to the jury at guilt/innocence and at punishment, the trial court's judgment is affirmed.

**BACKGROUND**

Riggs was driving his convertible Corvette with the top down during the late

evening of October 12, 2013. Officer David Haakinson, of the Hillsboro Police Department, passed Riggs at an intersection, recognized Riggs, and asked dispatch to check Riggs for outstanding warrants. When dispatch advised Haakinson that Riggs had an outstanding Class C warrant and that Riggs's driver's license was suspended, Haakinson decided to stop Riggs. After he caught up to Riggs, Haakinson turned on his overhead lights. Riggs did not stop. He continued down the street and accelerated onto another street. Haakinson then activated his siren. Riggs turned onto another street and again accelerated. Haakinson believed Riggs was travelling well over the posted speed limit. Riggs turned on yet another street, entered his driveway, and pulled into his backyard where he was arrested.

**JURY CHARGE ERROR**

In five issues, Riggs complains about jury charge error. Because all five issues relate to alleged charge error, we will discuss the law applicable to our review of such complaints first to the extent the law applies to more than one issue. To the extent the applicable law applies to only one issue, we will discuss that specific law in connection with our review of that issue.

*Standard of Review*

A claim of jury-charge error is reviewed using the procedure set out in *Almanza*. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *Haley v. State*, No. 10-13-00264-CR, 2014 Tex. App.

LEXIS 7207, *2 (Tex. App.—Waco July 3, 2014, pet. ref'd) (not designated for publication). If error is found, we then analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

If an error was properly preserved by objection, reversal will be necessary if there is some harm to the accused from the error. *Almanza*, 686 S.W.2d at 171. Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the charge error causes egregious harm, meaning the appellant did not receive a fair and impartial trial. *Id*. Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). However, the Court of Criminal Appeals has suggested that it is unlikely that charge error in the abstract portion of the charge which is not present in the application paragraph will be egregiously harmful. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999).

For both preserved and unpreserved charging error, the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). To obtain a reversal for jury-charge error, an appellant must have

suffered actual harm, not merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline*, 721 S.W.2d at 352.

*Conduct Elements*

Riggs complains in his fourth issue that the charge included definitions of conduct that were not relevant to the charged offense. Because no court in Texas has determined what conduct elements are involved in the offense of evading arrest or detention, we discuss this issue first. In this issue, Riggs contends the trial court erroneously defined the culpable mental states of "intentionally" and "knowingly" in the charge to the jury on guilt/innocence. Specifically, he contends that the trial court failed to properly tailor the definitions to the applicable conduct elements.

There are three "conduct elements" which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *Cook v. State*, 884 S.W.2d 485, 487 (Tex.Crim.App.1994). An offense may contain any one or more of these "conduct elements" which alone or in combination form the overall behavior which the Legislature criminalized, and it is these essential "conduct elements" to which a culpable mental state must apply. *Id.*; *Gutierrez v. State*, 446 S.W.3d 36, 40 (Tex. App.—Waco 2014, pet. ref'd). Thus, the culpable mental state definitions in the charge must be tailored to the conduct elements of the charged offense. *Cook*, 884 S.W.2d at 487; *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Gutierrez*, 446 S.W.3d at 40. Where the charged offense does not

include a particular conduct element, it is error for the court's charge to contain a definition of the culpable mental state for that conduct element in the abstract portion of the charge. *See Hughes v. State*, 897 S.W.2d 285, 295-296 (Tex. Crim. App. 1994); *Gutierrez*, 446 S.W.3d at 40. A trial court does not err, however, in defining the culpable mental states for nature, result, and circumstances surrounding conduct when all three of the conduct elements are contained within the offense. *See Patrick*, 906 S.W.2d at 492 (Tex. Crim. App. 1995); *Gutierrez*, 446 S.W.3d at 40.

The court's charge in this case defined "intentionally" and "knowingly" according to Texas Penal Code Section 6.03. TEX. PENAL CODE ANN. § 6.03(a) and (b) (West 2011). Those definitions are as follows:

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> (b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id*.

Riggs argues that the offense for which he was charged, evading arrest or detention with a vehicle, focuses on the nature of the actor's conduct and the circumstances surrounding his conduct but does not focus on the result of the actor's conduct. Thus, his argument continues, the trial court's inclusion of the result of

conduct language in the definitions was error.

A person commits the offense of evading arrest or detention if the person "intentionally flees from a person he knows is a peace officer…attempting lawfully to arrest or detain him." *See* TEX. PENAL CODE ANN. § 38.04(a) (West 2011). Where specific acts are criminalized because of their very nature, a culpable mental state must apply to committing the act itself. *See Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994); *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). But, as charged in this case, the act of fleeing is not criminal by its very nature. *See McQueen*, 781 S.W.2d at 603 (the act of operating motor vehicle in the offense of unauthorized use of a motor vehicle is not criminal by its nature). Neither is it a result-of-conduct offense because the statute does not prohibit any specific result of fleeing. *See id.* Instead, the offense of evading arrest or detention with a vehicle is a circumstances-surrounding-the-conduct offense; the act of fleeing becomes criminal only because of the actor's knowledge that a peace officer is attempting lawfully to arrest or detain the actor. *See Huffman v. State*, 267 S.W.3d 902, 908 (Tex. Crim. App. 2008); *McQueen*, 781 S.W.2d at 603.

However, the culpable mental state of "intentionally" prescribed by the statutory language of evading arrest or detention does not modify the circumstances surrounding the conduct, but instead, precedes the act of fleeing. A similar problem was noted by the Court of Criminal Appeals for the offense of unauthorized use of a motor vehicle in *McQueen v. State*, 781 S.W.2d 600, 604 (Tex. Crim. App. 1989). There, the Court held that

because some form of culpability must apply to those conduct elements which make the overall conduct criminal, the offense of unauthorized use of a motor vehicle encompassed two conduct elements: "that the defendant intentionally or knowingly operated a vehicle (nature of conduct) knowing that such operation was without the effective consent of the owner (circumstances surrounding conduct)." *Id*. For the reasons expressed in *McQueen*, we find that the offense of evading arrest or detention also includes two, and only two, conduct elements: "nature of the conduct" which applies to the element of intentionally fleeing and "circumstances surrounding the conduct" which applies to the element of knowledge that a peace officer is attempting lawfully to arrest or detain the person.

Thus, it was error for the trial court to include the result-of-the-conduct element in its definitions of the culpable mental states of intentionally and knowingly in the abstract portion of the charge. We must now determine whether Riggs was harmed by this error.

*Harm Analysis*

Riggs did not object to this portion of the charge. Accordingly, we will conduct our review using the above-described standard of review for egregious harm. Along with the other *Almanza* factors, we may also consider the degree, if any, to which the culpable mental states were limited by the application portion of the jury charge when assessing harm. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Hughes v.*

*State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994); *Cook v. State*, 884 S.W.2d 485, 492 (Tex. Crim. App. 1994). When the application paragraph points the jury to the appropriate portion of the definitions, this mitigates against a finding of egregious harm. *See Patrick*, 906 S.W.2d at 493; *Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd).

Here, the charge set out the elements of the offense and then applied those elements to the facts of the case. Although the definitions of "intentionally" and "knowingly" set forth the three alternative conduct elements, when those terms are viewed in their factual context, it was apparent which conduct element applied to which element of the offense. For instance, the application paragraph stated that Riggs "did intentionally flee" from a "City of Hillsboro, Texas Police Officer." Referring back to the definitions of the culpable mental states, it can be determined that Riggs's act of fleeing is not a result of his conduct and thus the applicable portion of the "intentionally" definition is the nature of Riggs's conduct. Further, it can be determined that Riggs's knowledge that the "Hillsboro, Texas Police Officer" "was a peace officer, who was attempting to lawfully arrest or detain" Riggs; and thus, the applicable portion of the "knowingly" definition is the circumstances surrounding Riggs's conduct.

Although Riggs disputed the fact that he fled or knew an officer was trying to detain him, it is clear the jury weighed more heavily the direct and circumstantial evidence that Riggs fled while being aware that the officer was trying to arrest or detain

Riggs. Further, although Riggs's counsel argued that the State had the burden to prove Riggs intended the results, the State focused the jury on deciding the question of the nature of Riggs's flight and that Riggs was aware that the officer was attempting to detain him.

Riggs also argues that we should take into consideration that there are numerous alleged errors in the trial court's charge in finding harm under this issue. Based on this record, we decline to do so. *See Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010); *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004) ("The cumulative error doctrine provides relief only when constitutional errors so 'fatally infect the trial' that they violated the trial's 'fundamental fairness.'").

Accordingly, Riggs was not egregiously harmed by the trial court's erroneous inclusion in the charge of the result-of-conduct definition for the culpable mental states of the charged offense. His fourth issue is overruled.

*Indictment and the Officer's Name*

In his first two issues, Riggs contends the jury charge on guilt/innocence did not comport with the indictment in that the charge did not specifically name the officer attempting to arrest or detain Riggs as did the indictment (Issue One), and the trial court commented on the weight of the evidence in the charge by instructing the jurors that the officer's name was not a substantive element of the offense (Issue Two). Riggs objected to the charge with regard to both complaints. Assuming without deciding that

the charge was erroneous for the two reasons as objected to, we must determine whether Riggs suffered some harm from the error.

*Harm Analysis*

We will conduct our review using the above-described standard of review.

Interestingly, Riggs was the one who caused the State and the trial court to go down the particular path which resulted in the two complained of charge errors. As early as voir dire and also in opening statements, Riggs tried to impose upon the State the requirement to prove Riggs knew the name of the officer that was pursuing Riggs, not simply that it was a peace officer that was in pursuit. The charge was apparently worded as it was to prevent Riggs from arguing this potentially erroneous statement of the law to the jury. *See Tillery v. State*, No. 05-04-00425-CR, 2005 Tex. App. LEXIS 549, *3 (Tex. App.—Dallas Jan. 26, 2005, no pet.) (not designated for publication) (peace officer's name is not a substantive element of the offense).

David Haakinson, the officer who attempted to detain Riggs, testified at trial and was the peace officer identified by name in the indictment. The charge set out the elements of the offense and the application paragraph applied the facts to the elements without reference to the name of the specific peace officer in pursuit of Riggs. There was never any indication that any other officer attempted to detain Riggs that night. Further, based on the evidence presented, and as argued by the State before the jury, it is clear that the jury believed Riggs fled from Haakinson knowing that a peace officer

was in pursuit, although Riggs argued that he did not know any peace officer was behind him attempting to stop him. Haakinson was in a marked patrol unit, had his lights and siren on, and Riggs was in a convertible with the top down and accelerated and made evasive turns after the officer's emergency lights and siren were activated.

Accordingly, based on our review of the record using the *Almanza* factors, we cannot conclude that Riggs suffered some harm from the trial court's errors, if any, in the charge regarding the peace officer's name. Riggs's first and second issues are overruled.

### *Definition of "Fleeing"*

In his third issue, Riggs asserts that the trial court erred by providing a non-statutory definition of "fleeing" in the charge on guilt/innocence, thus improperly commenting on the evidence. Fleeing was defined as "anything less than prompt compliance with an officer's direction to stop." Although the definition did not point to any specific piece of evidence for special attention, it did improperly focus the jury on the type of evidence that would support a finding that Riggs was "fleeing." *See Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012).

### *Harm Analysis*

Because Riggs did not object to this portion of the charge, we will conduct our review using the above-described standard of review.

Although the improper definition was included in the abstract portion at the

beginning of the charge, the application paragraph did not repeat it. At trial, Riggs disputed that he "fled," introducing his own video showing the distance covered and road condition during the daylight hours and emphasizing that the pursuit was less than a minute from the time the officer activated his lights until Riggs came to a stop. However, testimony presented by the State and the dash-camera video of the chase showed that Riggs had several opportunities to stop, sped up after Haakinson activated his overhead lights, and only came to a stop after proceeding down his driveway and into his backyard. The State argued Riggs failed to promptly stop; however, Riggs did not focus on this aspect of the offense. Riggs argued that he did not flee because he did not speed and if he had wanted to evade, he would have "[l]eft it in the dust." He also argued that he did not know a peace officer was behind him or that he had a warrant out; and thus, had no reason to evade.

Based on our review of the record using the *Almanza* factors, we cannot conclude that Riggs suffered egregious harm from the trial court's inclusion of the definition of the non-statutory term "fleeing" in the abstract portion of the court's charge. Riggs's third issue is overruled.

*Reasonable Doubt Instruction*

In his fifth and final issue, Riggs contends the trial court erred by failing to include a reasonable doubt instruction in the charge on punishment regarding evidence of an extraneous offense. A trial judge must *sua sponte* instruct the jury at the

punishment phase that the State must prove any extraneous offenses beyond a reasonable doubt. TEX. CODE CRIM. PROC. art. 37.07, § 3(a) (West 2006); *Delgado v. State*, 235 S.W.3d 244, 252 (Tex. Crim. App. 2007); *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). Because the trial court did not include this instruction, the trial court erred.

*Harm Analysis*

Because Riggs did not object to this portion of the charge, we will conduct our review using the above-described standard of review. Additionally, in determining whether Riggs was egregiously harmed pursuant to the *Almanza* factors, we must consider the impact of the omission of a reasonable doubt instruction concerning the extraneous offense. *See Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Martinez v. State*, 313 S.W.3d 358, 369-70 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

Although the trial court failed to instruct the jury to not consider the extraneous evidence unless it was proven beyond a reasonable doubt, the charge in the sentencing phase of the trial generally told the jury that the State had the burden of proof throughout the trial. Both the State and Riggs argued to the jury that the State had to prove beyond a reasonable doubt that Riggs committed the extraneous offense.

The extraneous offense evidence provided during punishment was an accusation that Riggs shot another person in the arm after a confrontation. That offense had been

charged but had not yet been tried at the time of this trial. Although Riggs denied that he shot anyone, the alleged victim and a witness testified that Riggs shot the alleged victim.

Further, the punishment Riggs received does not show that he was impacted by the failure of the trial court to include a reasonable doubt instruction in the charge. At the beginning of the punishment phase of the trial, Riggs pled true to two prior felony convictions; thus, the range of punishment for the evading offense was enhanced to 25 to 99 years or life in prison. The State then proved one other final felony conviction. Because Riggs had three prior felony convictions and another charged felony, the State argued for a sentence of at least 75 years in prison. The jury assessed a sentence of 65 years in prison.

Accordingly, based on our review of the record pursuant to the *Almanza* factors, we cannot conclude that Riggs was egregiously harmed from the trial court's failure to include a reasonable doubt instruction as to extraneous offense evidence in the charge on punishment. His fifth issue is overruled.

CONCLUSION

Having overruled each issue on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
      (Justice Davis concurring and dissenting)
Affirmed
Opinion delivered and filed December 10, 2015
Publish
[CRPM]

